And so the first case we're going to call is De Bar v. First Energy, 252006. Mr. Goodman. Good morning, Your Honor. Before I begin, if I could reserve two minutes for my rebuttal. Sure. May it please the Court, my name is Jeff Goodman. I represent the plaintiff and appellate in this case, Lisa De Bar, who's the administrator of the estate of her late son, Cody Ant. The district court in this matter erred by dismissing three different defendants for three different reasons, and in doing so, holding plaintiff to an almost insurmountable and inappropriate high burden at the pleading stage. The district court held plaintiffs to standards of evidentiary proof, as opposed to standards of facial plausibility. Mr. Goodman, are you folks pursuing these claims based on the contractual language or the actual conduct of the parties? It's a little different for the different defendants, Your Honor. So there's three defendants. There's first AESC, the property owner, who has our claims against them are rooted in their responsibilities as the property owner to provide a safe place for business invitees such as Mr. Hatt. With regard to First Energy Supply Company, FESC, there are the contractual allegations as well as the allegations of actual control. Under Beal, either of them are sufficient. And so although we cite the contract throughout our complaint, we also cite allegations of actual control. And then FEC is really a vicarious claim through the behavior of other people. If I can start with AESC, the owner of the property, everybody agrees in this case that AESC is the owner. Everybody agrees that Cody Hatt was a lawfully present business invitee performing work on a demolition project that his employer was contracted to perform. Yet where the disagreement comes is the district court's conclusion that reasonable minds could not differ as to the consequences that performing demolition work on a catwalk 100 feet in the air, tragic as the consequences may be, presents a potential condition that is both open and obvious. OK, so I think the question here about AESC is what is it that has to be open and obvious under the superior knowledge doctrine? Now, you're saying, well, was this particular catwalk, was it obvious? But when I look, the two most on point precedents, that's not how the Pennsylvania Supreme Court applied it. Like, yeah, the electrical fault itself wasn't obvious, but the contractor had been hired to fix a defective electrical system. So the risk of electrocution was enough. It didn't have to be that particular crossed wires. And even closer is Atkins, where the misstep was not obvious in the building. That's the equivalent of what you're arguing about the catwalk. But the point is, it was a demolition project like this. And we know that demolition projects, the risks of working in dilapidated houses to be demolished are obvious. So those are at higher levels of generality. But your argument seems to depend on what's obvious at a very low level of generality. So first, let me point out, this is a pleading stage. Those cases dealt with cases that were more mature and a factual record had been developed at the pleading stage. We don't know why it is that the catwalk at issue collapsed. We allege in our complaint that it collapsed. I mean, all we always seem to know in the record is that the deceased fell on the catwalk. Well, so paragraph one hundred and five of our complaint, we very specifically state the catwalk catastrophically failed and collapsed, causing Cody to free fall and land on a separate metal catwalk 40 feet below. So, of course, the standard is we have to accept the allegations and the complaint is true at this stage. And the allegation clearly is the catwalk itself catastrophically failed and collapsed. Now, we're candidly relying on EMS reports, some news outlets reports, because I don't have the benefit in this case of a living client who I can ask what happened. I don't have the benefit of this stage of taking the depositions of the workers who were there. That seems to be why we shouldn't be looking at the specifics of the catwalk. We should be looking generally at this is a demolition site. We don't have to rely on a living client. We don't have to rely on the specific causal mechanism. We just look at this was a demolition site and demolition sites, as in Atkins, the Pennsylvanians recognizes are are dangerous in this way. Of course. And workers at demolition sites in Pennsylvania are working at heights every day. But a catwalk's basic function is to support human weight. Yeah, but also another potential contributing factor. This plant had been unused or decommissioned, however you want to call it, for a period of at least eight years. And again, Your Honor, that's an argument that makes sense to the jury, perhaps of, well, maybe it was so dilapidated that Mr. Doesn't it make sense as to the open and obvious condition of either a decommissioned or an abandoned power plant, whatever you want to call it? Doesn't that factor in to the open or notorious open or obvious question? I agree that it factors in, but it is but one of many factors. And without discovery, we don't have the ability to understand those factors. Now, maybe if Mr. Hatt was involved in demolishing the catwalk and he took out the wrong screws, well, that's an issue of comparative fault. Maybe it was so rusted that he should have seen it and noticed. But those certainly aren't the allegations in the complaint. The allegations in the complaint are that the catwalk itself failed. It's not so much what Mr. Hatt knew. Doesn't it go more to what North American dismantling the independent contractor knew who they clearly inspected this project before they bid up, before they put a bid in? Well, I, I disagree regarding that it goes solely to what they knew as opposed to what Mr. Hatt knew under the open and obvious doctrine for a danger to be open and obvious. It must not only be known to exist, but the actual hazard itself must be recognized. And absent discovery, there is no way to understand what was subjectively appreciated or not about the condition of the catwalk by Mr. Hatt or, frankly, anybody, because we don't have the benefit of basic discovery in this case. We don't have the benefit of examining the catwalk yet to understand, did the metal just give way because it was rusted? We haven't been able to get the pictures that I would have to imagine AESC has related to it. There's no dispute that he was there as a business invitee, correct? Correct, Your Honor. And the attendant duties attached? Of course, Your Honor. That is not an item that is disputed in this case. And without factual discovery, we can't be held to the evidentiary proof of demonstrating why the catwalk collapsed. Our allegation is that catwalk failed, why it failed, whose fault it is. That is an issue that should be explored in discovery and not dismissed at this stage. But I can move on to FESC, which gets into the retained control issue. One other thing I just wanted to before I move on from AESC. In Pennsylvania, open and obvious is discussed within the context of assumption of risk and discussed within the context of comparative negligence. That is an issue that should go to the jury unless it is so clear and at a minimum should at least get to the discovery stage so that the court can make it based upon make the decision based upon a fulfilled record. Regarding FESC, can we consider that NADC agreed to be considered an independent contractor or assumed full responsibility? Is this a document that the complaint is relying on because the contractual relationship because retained control? Yes, so the contractual relationship, and that gets to the FESC issue, not the AESC issue because AESC doesn't have the contract. Yes, and so regarding retained control, the contract matters. Now, a little bit of procedural history. When I first filed the complaint, I, of course, don't have that contract. I don't have anything really other than some news reports, some EMT reports. It's four years later. The OSHA investigation isn't even available. So we're relying on the thin information we have. And then that contract, which is cited throughout the complaint, was actually attached by the defendant to their motion to dismiss, which prompted an amendment and some more detail. So let's keep in mind here. The only documents we're relying upon are the documents hand-selected by the defendants in support of their defense, not the documents through discovery that would more robustly be produced. But to your honor's point, regarding the issue of retained control and the district court's conclusion that our allegations were threadbare is just inconsistent with the reading of the complaint. At the complaint pages, I'm sorry, paragraphs 65 through 88, we robustly went through ways in which actual control was demonstrated. FESC created a code of conduct for the job site. That's not a boilerplate allegation. That's a specific document. FESC created general specifications for the Hatfield Power Plant and an FE generation personal safety manual. They had a project manager. We identify him by name, Brian Hammond. That's not threadbare. That's the guy who had the responsibilities. And then a project and purchase representative, who admittedly whose name we did not have, but whose responsibilities we did have. But which any of this established that this went beyond generic safety rules, which aren't enough for the retained control? Because the contract, which we quoted at paragraph 85, discusses responsible for oversight of contracted personnel to assure compliance with the contract documents. That's specifications that, according to our complaint, what we have to rely upon means and methods of work. Now, to get beyond that. How can I possibly do it without the ability to ask Mr. Hammond what he did on a day to day basis when he had this job site responsibility? Obviously, I can't ask Mr. Hat. I can't even ask his co-workers because without the ability to have discovery and depositions, we really have no ability to get that kind of information. The documents tell the story, the specifications. The documents tell a story, but the documents tell a contradictory story because the documents say in some parts that NADC should have exclusive control. Well, if they have exclusive control, why are there two guys for the owner? They're overseeing the work to make sure they comply with the documents. That's a question I'd like to be able to ask those individuals. Isn't that the answer? They're there to make sure they comply with the terms of the documents? Well, yes, and the documents deal – and I want to step back for a second. This was a sophisticated, complex demolition project. The purchase order was a $37 million job. There's got to be project oversight meetings. We don't have those minutes to know who's running them. There's job safety meetings I would expect every day. We don't have those documents because we haven't had the opportunity to take discovery. So without discovery, there is simply no way for us to place these documents in the context of the full story to understand who really called the shots about what. In a circumstance where NADC says we want to do it this way and Mr. Hammond says no, do it that way, well, what would happen? We don't have the ability to understand that without actually being able to get into the discovery. And that is why – maybe we lose this case at summary judgment. Maybe we lose this case at trial. But at the pleading stage, there is simply no way for us as the plaintiff to satisfy our burden based upon the district court's opinion because the only way would be able to talk to the people on site about what actually happened and get the documents about what actually happened on site. And the allegations in our complaint, when viewed in the light most favorable of the plaintiff, should clearly get us there. Now, Mr. Goodman, I know you started this case in the court of common pleas in Philadelphia County and it was removed to the eastern district. But the issues that we have to deal with, whether it be the issue against Allegheny or the issue against FESC are determined by Pennsylvania law, different doctrines. Correct. You haven't – why haven't you asked that this matter be certified to the Pennsylvania Supreme Court for them to decide these issues that they've already written on but may want to expound on the retained control doctrine? Because that, in our view, wouldn't be appropriate until we've been able to get the facts. And perhaps if we get the facts at a summary judgment stage, something like that perhaps could be appropriate. But not – this is just a pleading standard. And under the pleading standard, we clearly should be entitled to get discovery and get facts so that if the point comes where certification makes sense, the Supreme Court can do it based upon an appropriately developed factual record. Thank you. Thank you, Your Honors. Good morning. Good morning, Your Honors. May it please the Court, Andrew Sperl for Appellee's First Energy Service Company, First Energy Corporation, and Allegheny Energy Supply Company. So the two issues in general that I'd like to talk about are this issue of retained control and also the issue of what exactly is the risk that Mr. Hatch allegedly confronted that was open and obvious. And I'm going to go in the order that my colleague addressed these issues and talk first about AESC. I think, Judge Bibas, I think you hit the nail on the head when you discussed the issue of what is the nature of the risk that Mr. Hatch confronted because there's no duty for a landowner to guard or to protect against a risk to a business invitee that is open and obvious. Is a collapsing catwalk open and obvious? I mean, I understand that there are risk falls in this sort of construction, but Paragraph 105 clearly states that the catwalk collapsed. So Paragraph 105… Is that not enough? Paragraph 105 says that the catwalk catastrophically collapsed. It doesn't say that there was a defect with the catwalk. Well, a collapsing catwalk, can't you infer there's a defect if the thing's falling apart? Not necessarily, Your Honor, because in this case, if you look at the pleadings, what Mr. Hatch was doing was dismantling the catwalk. So I don't think that it would be fair to infer just from the fact that the catwalk failed that there was a problem with the catwalk and not, for instance, a problem with how the catwalk was being dismantled. This is really – the way that the defect is now described by plaintiff is really something that's new in the plaintiff's appellate briefing, identifying the issue as being one specifically with the catwalk. That's not something that really comes through in the complaint. It's not something that really came through in the briefing before. Well, isn't that obvious in the complaint? The catwalk catastrophically failed and collapsed. That's what it says. Because, again, Your Honor, just because the catwalk failed doesn't mean that there was a defect with the catwalk. There could be a problem with the way the catwalk was used or a way that the problem – a problem with the way that the catwalk was used. I think that's enough at 12B6 stage. What would be enough at 12B6? So I think that at the very least, I think that if plaintiff is going to try to overcome the rule, which isn't disputed about the landowner not needing to protect against an open and obvious risk, that the plaintiff needs to clearly identify what the risk is in the complaint. And if the risk is a defect in a particular piece of equipment, that needs to be identified. And I would just – to put some additional context in this, plaintiff had the opportunity to amend the complaint again with respect to AESC, and plaintiff elected to stand on the complaint with respect to AESC. So I think it's fair to infer that this is the best explication of the facts the plaintiff can give at the pleading stage. In fact, if you look at the complaint, the real issue that is identified in the complaint, the focus is on the absence of fall protection. So that's at paragraphs 106 to 113, paragraphs 135 to 141. And in particular, paragraph 141 alleges that certain defendants had a duty to warn persons, et cetera, from hazardous conditions, namely a lack of fall protection and or a lack of adequate fall protection. Not this issue with the catwalk. It may be that the reason that adequate fall protection is not emphasized at the appellate stage is because that is something that would be open and obvious, as opposed to this issue with the catwalk, which was not really alleged in the complaint. So in trying to ascertain what was available for the plaintiff to allege, what is it that you say the district court and us can look at as part of the record in addition to the complaint? In addition to the complaint, it would be the documents that are attached to or referred to in the complaint. Referred to or attached? We would say referred to in the complaint, and that would include the documents that we attach to our motion to dismiss. I know that all of them, all of the ones that we attach to our motion to dismiss. Our standard was it was either integral to or explicitly relied on. So were all of those documents explicitly relied on? And if not, why are they all integral to it? So I think that they. I think that they were relied upon by the plaintiff, because the plaintiff, the plaintiff's allegations refer quite a bit to to the purchase order. And these are documents that are either the purchase order themselves or our documents that are integral to the purchase order. That being said, your honors, even even if your honors accepted how the district court handled this, we don't need to look at all of those other documents in order to show that there was an absence of retained control here. We can we can just look at the purchase order and we can look at the allegations in the complaint. And in fact. You know, one of the questions that was that was posed to my colleague is that this plaintiff depend upon the contractual provisions or does plaintiff depend upon allegations of actual control to establish retained control? And in fact, the district court held that it was law of the case that the contractual provisions alone do not establish retained control. And I don't think that that's that's a record or appendix page 17. That was law of the case. And I don't believe that plaintiff has challenged that determination that that is law of the case. And so at this point on appeal, plaintiff does have to point to allegations of actual control in order. What do you make of the paragraph? Sixty five through eighty eight. That's not enough. And if not, why not? So paragraph sixty five through eighty eight, there are a lot of allegations in sixty five through eighty eight. But just because there are a lot of allegations doesn't make them legally sufficient. And I would put them into two buckets. Right. So after after the first amended complaint was dismissed, the district court said these were threadbare allegations and district court was correct about that. Second amended complaint bolstered them with some some more detail. The problem is, if you look at the second amended complaint, those allegations that are not mere threadbare allegations allege things that as a matter of law do not establish retained control. And so a few of the things that were mentioned are the existence of a code of conduct, general specifications, a safety manual. Well, Pennsylvania law is very clear that an owner or the person who retains the independent contractor is very much entitled to require compliance with safety specifications or code of conduct to have a safety representative present. And especially for those types of safety requirements, which really are sort of the bulk of the allegations in the complaint, Pennsylvania courts, Faribault, Beal have recognized that it would violate public policy if that type of safety specification constitute retained control. Other types of things that are alleged in the complaint also, as a matter of law, do not constitute retained control. And so, for instance, requiring the contractor to follow quality specifications, even if they aren't safety specifications. If you look at cases like Nurtovich, for instance, there is a lot of control that's discussed in that case over particular specifications for doing the work, when and where to do the work. In addition to Nurtovich, you can look at the Beal case. There's a lot of control that was exercised in those cases over when and where to do work. The type of control that has to exist in order for there to be retained control is control over the means and the manner of doing the work. And that is the type of control that is not established by the more specific allegations in the complaint. So really, again, you have two buckets. You have allegations in there that continue to be conclusory threadbare allegations, like just saying means and manner of doing work. Or you have the more specific allegations, which, as a matter of law, do not constitute retained control, if you look at the Pennsylvania case law on these issues. That case law is all post-discovery, correct? Most of the case law is. What is it? It's the better case from the Eastern District of Pennsylvania. Twenty eleven was not post-discovery. That was at the motion to dismiss stage. The Holt versus Lowe's Home Store Center's case that dealt with a different version of the restatement having to do with the existence of a particular condition on the property. But that was something that was also decided at the motion to dismiss stage. So, you know, with respect to this idea of what what is it that plaintiffs can do? I would just submit that, you know, plaintiffs have the same obligation that they do in any type of case. If it's a contract case, you have to identify the part of the contract that was breached and specifically how it was breached. If it's a tort case, you have to say what the duty is. Excuse me. And how that duty was breached. You have to say how it was breached. You can't just say there was there was a duty and a breach. And and that's the burden that the pleading standards put to to plaintiffs whenever they file a case. And it can't be that you you state allegations that are either conclusory or so vague that they don't put us on notice and then say that that discovery is allowed in order to flush those out. It's the same burden that applies in any type of in any type of tort action that a plaintiff has to confront. Another point that I'd like to make with respect to AESC, there was a reference made to this issue of assumption of the risk. And I just want to make sure that we're precise about that. So the Pennsylvania courts have made clear and as this court has recognized in the Kaplan case, the the assumption of risk doctrine in cases that involve whether or not there is landowner liability for an open and obvious defect. They've made clear that it's still the plaintiff's obligation to show that there is a duty. And that is how this issue of assumption of risk merges merges into the duty inquiry. It's still the plaintiff's obligation in the first instance to show that there is a duty. And it's it's true that in many cases that issue should proceed to the jury, but not if we're in a situation where reasonable minds could not disagree. And the district court held the reasonable minds could not disagree with respect to whether or not the issue of working at height is something that's open and obvious. And so that is something that needs to be shown at the pleading stage in order to plead the existence of a duty. Which case folds that working at heights is open and obvious. I don't know that there is a case that holds that. But the case law recognizes is that the issue can be decided as a matter of law where reasonable minds couldn't disagree. And so I think. Well, in essence, what you're saying is, if you bid on a contract that has silos like this, like this project ads and that there's height of 100 feet or more, that the risk is open and obvious. Is that what you're arguing? I think the risk of working at high would be open and obvious. And I guess the question on the next question, open and obvious to whom would be open and obvious to the contractor who bids to work? We're open and obvious to any employee who's part of that job. I'm not sure that the case law separates that out. I think the case that gets the closest to this, which is the helpful case from our perspective, is the LaRose case. Pennsylvania Superior Court case in which this issue was decided at the pleading stage had to do with a roofer encountering a ladder that was left on a property by by the owner. And the court held that it could be determined at the pleading stage that that risk was open and obvious. And so as I think that the case law takes into account the fact that the contractor, the worker is someone who's hired to do this. But I would note, as I read appellant's briefs, I don't think they're contesting the district court's determination that working at height is open and obvious. I think what they're trying to do is recast the nature of the hazard in terms of something else, which is this catwalk issue that we would contend was not adequately pleaded to begin with. You do recognize the difference between a theory of open and obvious due to the heights and a theory that the catwalk catastrophically failed? Yes, I do recognize the difference in that. I think that the plaintiff is not challenging the former and did not adequately plead the latter. What more would they need to plead in the case against Allegheny Energy other than what they pled in paragraph 105? Well, so and I'm going to couch this in terms of a hypothetical case because I don't necessarily believe that the facts exist that would allow this type of allegation to be made in good faith. But with that caveat, if you had a case like this where there was an allegation that there was some equipment that the landowner had on the property and the landowner and only the landowner knew that there was a problem with the equipment and it wasn't visible, that that's something that would need to be identified in the complaint. And we don't we don't have that here. Here we just have an allegation that the catwalk failed, but not that there was any particular defect in the catwalk. Thank you. Thank you, Your Honors. That the catwalk failed is sufficient at the pleading stage. Why the catwalk failed is an issue in discovery that obviously will be explored. And who bears responsibility for that failure is an issue in discovery. And when counsel said at first that plaintiff claimed the catwalk catastrophically collapsed but didn't say there was anything wrong with it. And Judge Reschrepper, you pointed out paragraph 105 doesn't just say collapsed. It says it failed and collapsed. And at the pleading stage, that is sufficient. The simple fact is to know why it failed, we need more information. This is a facially plausible analysis at this stage, and it should be sufficient to proceed based upon what we have pled. Regarding the retained control issue, cases like Nerdovich, cases like Beal had a mature factual record because discovery was completed. In which we do not have a living client who can tell us what happened on a day-to-day basis on the job site. So are the allegations from the contract alone enough to establish retained control as a matter of law? We've never said they are, but they do give a window into what was happening on the job site. They give a window that presumably Brian Hammond, who was supposed to be on site overseeing things, was actually doing that. The details of what happened from there require discovery. And again, under the facially plausible standard that we have at this stage, that is more than enough for this case to proceed through discovery so we can get the factual information. Mr. Goodman, if we agreed with you on your claim and your arguments involving Allegheny Energy, and felt that you were right, that at this stage we should reverse. What does that do to the other two defendants if we disagree with your retained control concept? Well, if you disagree with the retained control concept and only agree under the Allegheny Energy, I think that the case goes back down against Allegheny Energy and the case remains dismissed against the others. What that requires as a procedural step from there as far as appealing the issue against FEC and the timeliness of that, I simply don't know the answer, Your Honor. But we believe both of those issues. And FEC is on its own. I understand, Your Honor, and you've answered my question. All right. Thank you, Your Honor. Thank you very much. Thank you very much. Thank you, counsel, for the arguments and briefs. We'll take this matter under advisement and circle back to you. Thank you.